**ORIGINAL**

*cc: JMS*
*paid*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

**FILED IN THE**
**UNITED STATES DISTRICT COURT**
**DISTRICT OF HAWAII**

**FEB 0 2 2018**

at __2__ o'clock and __35__ min. __P__ M
**SUE BEITIA, CLERK**

*Bryant Wilson*
*3404 Bluespruce Way*
*Murfreesboro, TN 37128*
*BWils43@gmail.com*
*808-372-9374*

BRYANT DELMAR WILSON

TANISHA JANEEN WILSON

**Plaintiff**

**C IV18  00048 JMS KSC**

Case No.:

*GOVERNMENT NATIONAL MORTGAGE*
*ASSOCIATION AS TRUSTEE FOR GINNIE*
*MAE REMIC TRUST 2009-032,*
*CITIMORTGAGE, INC.*

**DEFENDANTS**

**PLAINTIFF'S COMPLAINT FOR:**
**LACK OF STANDING TO FORECLOSE,**
**FRAUD IN THE CONCEALMENT,**
**FRAUD IN THE INDUCEMENT,**
**UNCONSCIONABLE CONTRACTS,**
**BREACH OF CONTRACT, BREACH OF**
**FIDUCIARY DUTY, QUIET TITLE**
**SLANDER OF TITLE,**

**PLAINTIFF'S COMPLAINT FOR:  LACK OF STANDING TO FORECLOSE, FRAUD IN THE**
**CONCEALMENT, FRAUD IN THE INDUCEMENT, UNCONSCIONABLE CONTRACTS, BREACH OF**
**CONTRACT, BREACH OF FIDUCIARY DUTY, QUIET TITLE, SLANDER OF TITLE,**

COMES NOW the Plaintiff, Bryant Delmar Wilson, Tanisha Janeen Wilson ("Plaintiff"),
complaining of the Defendants as named above, and each of them, as follows:

**JURISDICTION AND VENUE**

1.      This Court has subject matter jurisdiction pursuant to the following statutes:

(a)15 U.S.C. § 1331, providing for "original jurisdiction of all civil actions arising

under the Constitution, laws, or treaties of the United States"; and (e) 15 U.S.C. §

1367, providing for "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." This Court also has jurisdiction over the claims because this case involves New York common law trusts.

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337(a), and 1345; under 12 U.S.C. § 5565(a)(1) with respect to CFPA claims and.

3.      Venue is proper in this District under 28 U.S.C. §1391(b)(1), because Defendants are residents of and/or conduct business in this District. This Court has personal jurisdiction over Defendants because they are residents of and/or conduct business in this District and under Hawaii's long arm statute.  The claims also relate to The Ginnie Mae 's role as trustee over a trust created under New York law and/or administered at least in part in New York.

## PARTIES

4       Plaintiffs are residents of  91-1028 Maulihiwa St., Kapolei, Hawaii 96707 and are, in all respects material hereto, sui juris.

5.      Defendant, Government National Mortgage Association is a securitized trust  organized and existing under the laws of New York and Hawaii.., and is

doing business throughout this district. Defendant can be served with process by servings at 451 7th St., SW, room B-133, Washington, D.C. 20410

6.    Citimortgage Inc., present servicer, is located at P.O. Box 6243, Sioux Falls, S.D. 57117. Defendant, Does, are individuals or corporations that aided and abetted in the civil conspiracy to deny Plaintiffs a loan modification which is the subject of this lawsuit.

7.    Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-ventures of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture.

## GENERAL ALLEGATIONS

11.    On March 13, 2009  Plaintiff Bryant Delmar Wilson, Tanisha Janeen Wilson financed . (the "property") at 91-1028 Maulihiwa St., Kapolei, Hawaii with Home Savings of America Corporation . for $572,498..

12.    A forensic audit (the "audit") have been  performed on the property . The audit from Certified Forensic Loan Auditors on Jan. 7, 2018 shows  that there has

been a break in the chain of title and found that the original deed from

CitiMortgage, Inc. was never assigned to Ginnie Mae REMIC Trust 2009-032.

. Michael Carrigan's ( auditor ) was retained by Bryant Delmar Wilson, Tamisha

Janeen Wilson to review the chain of title for the Mortgage Deed and Note

originated by Citimortgage, Inc. on or about March 13, 2009 in the amount of

$572,498.00 which is the subject of this action.  I was asked to point out any

discrepancies or issues of fact regarding the chain of title and ownership claims to

the Mortgage Deed, and to render an opinion as to any defects, deficiencies, and/or

fraud should they exist.

12.     The following documents were inspected and marked as exhibits:


**Exhibit 2** – Citimortgage Response Letter – April 27, 2011

**Exhibit 3** – Assignment

**Exhibit 4** – Ginnie Mae  screenshot

**Exhibit 5** – NTC Blog Post – Re:

**Exhibit 6** – Other Assignments by Alexandra Barezewiski

13.     Having reviewed the above documents, my professional opinions are as

follows:

    a.  The chain of title to the Wilson Mortgage Deed is clouded, as the

servicer "Citimortgage" has used deception and fraudulent assignments to conceal the transfer history and identities of hidden investors. And,

b. Statements made to my client in a responsive letter dated April 27, 2011, along with a copy of the Note, show no evidence of transfer and assignment of the Note in contradiction to the servicing records and disclosures provided to the borrower in the letter, and this is indicia of deception and fraud.

## EVIDENCE IN SUPPORT OF OPINIONS

### Citimortgage falsely notarized the Alexandra Barczewishi Assignment

14.    Attached as **Exhibit 2** is a resume of Alexandra Barczewishi which clearly shows she has been employed with Citimortage, Inc. since March, 2012 to the present. However, the notary has signed under oath that Alexandra Barczewishi is a Vice-President of MERS. Copies of W-2, pay stubs will show that Ms. Barczewishi has never been paid or worked for MERS.

15.    The Note bears no endorsement(s) and/or allonge(s) as of Jan. 7, 2018 audit by Certified Forensic Loan Auditors.. However, the servicing system data provided shows a history of the account beginning March 13, 2009 through present, along with a glossary of "Transaction Codes." Per the glossary, codes "RS" and "ITR" mean "Investor Transfer." According to this Citimortgage data, there was an investor transfer of the Wilson loan from "Old" investor "1296" to "New" investor "5620" on "12/12/2009," and then another transfer from "Old"

investor "5620" to "New" investor "5912" on 04/22/2010. There are no assignment and/or endorsement on the Note to support these transfers. The identities of these investors, as well as the documents supporting the transactions, are being concealed from the borrower and the Court, and discovery is necessary for me to complete my analysis.

16.   Pursuant to Mr. Wilson, he has not received any notification that his loan was purchased by any other entity as required by 15 U.S.C. §1641(g).

17.   I ran a search of the Wilson Mortgage Deed in Ginnie Mae "Look-Up Tool" at www.knowyouroptions.com/loanlookup and I've provided a screenshot of the results as **Exhibit 4**. The screenshot states, "GINNIE MAE *LOAN LOOKUP RESULTS: MATCH FOUND*." And, "*It appears Ginnie Mae  owns your loa[n"]*, and "*Mortgage Loan Closing Date: March 13, 2009*."

18.   From my experience as both an investigator and my years in the mortgage industry, loans purchased by the Government Sponsored Entities (GSE's) such as Ginnie Mae and Freddie Mac where acquired at or very near the time of loan origination.

19.   If the Wilson loan was indeed sold to Ginnie Mae soon after origination, as evidence suggests, there have been no assignments or endorsements of the Note to Ginnie Mae which was required by Ginnie Mae.

20.   From experience investigating cases involving Ginnie Mae, I have read and reviewed this entity's policies and procedures which they provide to the public at their website: https://www.ginniemae.com/content/guide/selling/b8/3/04.html

21.   The following policies regarding "Note Endorsement" and "Signature Requirements for Endorsements" are provided at Ginnie Mae's website:

## Note Endorsement

The originating lender must be the original payee on the note, even when MERS is named as nominee for the beneficiary in the security instrument. The note must be endorsed to each subsequent owner of the mortgage unless one or more of the owners endorsed the note in blank. <u>The last endorsement on the note should be that of the mortgage seller. The mortgage seller must endorse the note in blank and without recourse.</u>

For example:

PAY TO THE ORDER OF

WITHOUT RECOURSE

LENDER'S NAME

(Authorized Signature)

NAME OF AUTHORIZED SIGNER

TITLE OF AUTHORIZED SIGNER

## Signature Requirements for Endorsements

The endorsement should be signed only by those persons specifically authorized to execute documents in the lender's behalf. Signatures must be original, except that Ginnie Mae accepts a lender's facsimile endorsement of notes for those jurisdictions in which the lender has determined that such endorsements are valid and enforceable.

A lender that chooses to use facsimile signatures to endorse notes must warrant that the endorsement is valid and enforceable in the jurisdiction(s) in which the security properties are located and must retain in its corporate records the following specific documentation authorizing the use of facsimile signatures:

- legal opinions related to the legality and enforceability of facsimile signatures for each jurisdiction in which the lender uses them;
- a resolution from the lender's board of directors authorizing specific officers to use facsimile signatures, stating that facsimile signatures are a valid and binding act on the lender's part, and authorizing the lender's corporate secretary to certify the validity of the resolution, the names of the officers

authorized to execute documents by using facsimile signatures, and the authenticity of specimen forms of facsimile signatures;

- the corporate secretary's certification of the authenticity and validity of the board of director's resolution;
- a notarized certification of facsimile signature, which includes both the facsimile and the original signatures of the signing officer(s) and each officer's certification that the facsimile is a true and correct copy of his or her original signature.

<u>The mortgage seller may not delegate to an attorney-in-fact its authority to execute an endorsement. The endorsement may not be executed by a party using a power of attorney.</u>

22.   There is an issue of fact as to the whereabouts of the "original" Note,

because investors such as Ginnie Mae would not have purchased a mortgage note

without it being endorsed upon sale.

## Fraudulent Assignments

23.     The subject Mortgage Deed was originated by Home Savings of

America Corporation . on or about March 13, 2009. Mortgage

Electronic Registration Systems, Inc. (MERS) is named as mortgagee

and is acting solely as nominee for lender and lender's successor and

assigns.

24.   Attached as **Exhibit 3** are two publicly recorded assignments of the

Wilson Mortgage Deed per my research. The sequential order of the assignments

are as follows:

**Assignment #1**

**Execution Date**: Sept. 9, 2014
**Recording Date**: Sept. 12, 2014
**Assignor**: Mortgage Electronic Registration Systems, Inc. as nominee for Citimortgage, Inc.
**Assignee**: Citimortgage, Inc.

25.   **Assignment #1** transfers and assigns both the Mortgage Deed and the

Note from MERS. to Citimortgage, Inc. for "$10.00 Consideration," while

**Assignment #1** assigns and transfers the Mortgage Deed without the Note. As

outlined above, if Ginnie Mae truly had purchased the Wilson Mortgage Deed, it

would have required transfer of the Note.

" The document is also executed by "Alexandra Barezewiski – Vice President –

MERS."

26.   I ran a search of Alexandra Barezewiski online and located a blog post

from CitiMortgage showing she has worked for Citimortgage since March, 2012.

"Document Production Division." Hence, it is my opinion that Ms. Barezewiski

was not an actual "Vice President" of MERS. as signed and notarized on the

document. Of note, **Assignment #1** makes no mention of any recorded Power of

Attorney showing just how Barezewiski  had the authority to sign as an officer of

MERS.

27.    Furthermore, evidence shows that Barezewiski has been executing

similar assignments as an officer of other companies as well. Attached as **Exhibit 6**

are two such assignments between 2014 and 2016 whereby Barezewiski signs in

the presence of a notary that she is the "Vice President" of both "Wells Fargo" and

"Citifinancial, Inc." This is the exact kind of behavior that has been coined "Robo

Signing," which lead to the infamous $25B AG Settlement and Consent Judgment

in 2012.

28.    In my experience investigating "document production mills" such as

Nationwide Title Clearing, as well as many others, the forging and fabrication of

mortgage documents continues to this day unabated. I am willing to educate the

Court with an abundance of evidence to support my statement.

29.    For the reasons outlined above, I reaffirm my opinions as set for

in¶13(a-b) above.


38.    The Wilson's  attempted a series of attempts to get a loan modification, all of

which were repeatedly delayed due to lost paperwork, claimed "incomplete"

paperwork, and repeated re-assigned to new loan officers.  Bryant Delmar Wilson,

Tanisha Janeen Wilson sent in two requests for QWR's on 4/19/2011, and

7/18/2012.  In addition, Mr. Wilson made 8 mediation requests in Hawaii.

39.    In addition, and unbeknownst to Plaintiff,  Home Savings of America .

(originator), illegally, deceptively, and/or otherwise unjustly qualified Plaintiffs for

a loan which CitiMortgage   knew or should have known that Plaintiffs could not

qualify for or afford. For example, the underwriter approved this loan based upon

credit scores and the Plaintiffs "Stated Income". Had CitiMortgage, Inc.used a

more accurate and appropriate factor, such as Tax Forms and a more determinative

level of scrutiny of determining compliance, with the requirement to provide

Plaintiffs with a Mortgage Loan Origination Agreement showing their debt to

income ratio, Plaintiffs would not have qualified for the loan. Consequently,

CitiMortgage, Inc .approved Plaintiffs with a loan product that it knew or should

have known would never be able to be fully paid back by Plaintiffs. CitiMortgage,

Inc .ignored long-standing economic principals of underwriting and instead,

knowingly, greedily and without any regard for Plaintiffs' rights sold Plaintiffs a

deceptive loan product.

40.    At all times material hereto Defendants knew of Ginnie Mae's actions and

participated in them.

41.    Federal National Mortgage Corporation was the successor in
interest  to CitiMortgage, Inc.

42.    On or about March 13, 2009 (the "Closing"), Plaintiff purchased the

property located at 91-1028 Maulihiwa St., Kapolei, Hawaii 96707

As a result of the notarization fraud on the Wilson's chain of title the Plaintiff

hereby allege a violation of Federal Rule 60 (b)- FRAUD UPON THE COURT :


        DuPont appealed from the judgment in the Kawamata Farms case, and this
court affirmed the jury's verdict, the $1.5 million sanction, and the sanctions awarded
pursuant to HRCP Rule 60(b)(3). Id. In affirming the trial court, this court held that
"DuPont committed discovery fraud upon the circuit court and the other parties."
Kawamata Farms, 86 Hawai'i at 257, 948 P.2d at 1097. We further characterized the
nature of DuPont's fraud as "egregious" and an "unusual, unique example of
unprecedented discovery fraud perpetrated against the court." Kawamata Farms, 86
Hawai'i at 258, 948 P.2d at 1098. *fn7

        *fn 7:  7
        This court cited the trial court's findings that DuPont engaged in "abusive
litigation practices ... in bad faith" and that "DuPont engaged in fraud and intentional
misconduct which abused that judicial process. DuPont acted in bad faith, wantonly and
for oppressive reasons." Kawamata Farms, 86 Hawai'i at 259, 948 P.2d at 1099. The trial
court made these findings based on "clear and convincing" evidence.   Matsuura v. E.I. du
Pont de Nemours & Co., 102 Haw. 149, 152, 73 P.3d 687, 690 (2003), opinion after
certified question answered, 330 F. Supp. 2d 1101 (D. Haw. 2004), rev'd and remanded
sub nom. Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353 (9th Cir.
2005).

        A. Liability for Litigation Misconduct Including Fraud
        As previously stated, the first certified question asks:

        Under Hawai'i Law, is a party immune from liability for civil damages
based on that party's misconduct, including fraud, engaged in during prior litigation
proceedings?

        Hawai'i courts have applied an absolute litigation privilege in defamation
actions for words and writings that are material and pertinent to judicial proceedings. See
Abastillas v. Kekona, 87 Hawai'i 446, 447, 958 P.2d 1136, 1137 (1998) (noting that the

Intermediate Court of Appeals (ICA) affirmed the circuit court's dismissal of a libel action against an attorney based upon "absolute immunity"); Ferry v. Carlsmith, 23 Haw. 589, 591 (1917) (adopting an absolute privilege for communications made by attorneys "in the conduct of judicial proceedings," discussed in greater detail infra ); Hall v. State, 7 Haw.App. 274, 285, 756 P.2d 1048, 1056 (1988) (holding that a deputy attorney general's alleged defamatory statements made in preparation of the defense of his clients were absolutely privileged); McCarthy v. Yempuku, 5 Haw.App. 45, 48, 678 P.2d 11, 14 (1984) (noting that the Hawai'i Supreme Court has adopted an absolute litigation privilege).

Matsuura v. E.I. du Pont de Nemours & Co., 102 Haw. 149, 152, 73 P.3d 687, 690 (2003), opinion after certified question answered, 330 F. Supp. 2d 1101 (D. Haw. 2004), rev'd and remanded sub nom. Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353 (9th Cir. 2005).

b. placing the burden of testing the evidence upon the litigants during trial

The U.S. Supreme Court has stated that "the truth-finding process is better served if the witness's testimony is submitted to 'the crucible of the judicial process so that the factfinder may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies.' " Briscoe, 460 U.S. at 334, 103 S.Ct. 1108. Stated another way, "[I]n immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence." Silberg, 266 Cal.Rptr. 638, 786 P.2d at 370.

Matsuura v. E.I. du Pont de Nemours & Co., 102 Haw. 149, 152, 73 P.3d 687, 690 (2003), opinion after certified question answered, 330 F. Supp. 2d 1101 (D. Haw. 2004), rev'd and remanded sub nom. Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353 (9th Cir. 2005).

The litigation privilege helps ensure that the parties diligently investigate and test the evidence in a timely manner. Placing the burden of testing the evidence on the parties potentially limits subsequent claims of newly discovered evidence or fraud and is, therefore, also related to the policy of encouraging the finality of judgments, discussed infra. However, withholding and destroying evidence obviously frustrates the policy of placing the burden of testing the evidence upon the litigants. Clearly, parties cannot test what is willfully and wrongfully withheld from them. Therefore, such policy does not favor limiting liability in subsequent proceedings when fraud is uncovered after judgment has been rendered or the case has been settled and dismissed.

Matsuura v. E.I. du Pont de Nemours & Co., 102 Haw. 149, 152, 73 P.3d 687, 690 (2003), opinion after certified question answered, 330 F. Supp. 2d 1101 (D. Haw. 2004), rev'd and remanded sub nom. Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353 (9th Cir. 2005).

b. *placing the burden of testing the evidence upon the litigants during trial*

The U.S. Supreme Court has stated that "the truth-finding process is better served if the witness's testimony is submitted to 'the crucible of the judicial process so that the factfinder may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies.' " *Briscoe*, 460 U.S. at 334, 103 S.Ct. 1108. Stated another way, "[I]n immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence." *Silberg*, 266 Cal.Rptr. 638, 786 P.2d at 370.

The litigation privilege helps ensure that the parties diligently investigate and test the evidence in a timely manner. Placing the burden of testing the evidence on the parties potentially limits subsequent claims of newly discovered evidence or fraud and is, therefore, also related to the policy of encouraging the finality of judgments, discussed *infra*. However, withholding and destroying evidence obviously frustrates the policy of placing the burden of testing the evidence upon the litigants. Clearly, parties cannot test what is willfully and wrongfully withheld from them. Therefore, such policy does not favor limiting liability in subsequent proceedings when fraud is uncovered after judgment has been rendered or the case has been settled and dismissed.

Matsuura v. E.I. du Pont de Nemours & Co., 102 Haw. 149, 152, 73 P.3d 687, 690 (2003), opinion after certified question answered, 330 F. Supp. 2d 1101 (D. Haw. 2004), rev'd and remanded sub nom. Living Designs, Inc. v. E.I. Dupont de Nemours & Co., 431 F.3d 353 (9th Cir. 2005).

This court has stated that, as "a general rule, a collateral attack may not be made upon a judgment or order rendered by a court of competent jurisdiction. If it is only a question of error or irregularity and not of jurisdiction, it cannot be raised on collateral attack." *First Hawaiian Bank v. Weeks*, 70 Haw. 392, 398 772 P.2d 1187, 1191 (1989) (brackets, citations, and internal quotation marks omitted); *see also State v. Grindling*, 96 Hawai'i 402, 31 P.3d 915 (2001); *In re Genesys*, 95 Hawai'i at 37 n. 4, 18 P.3d at 899 n. 4; *Matson Navigation Co. v. Federal Deposit Ins. Corp.*, 81 Hawai'i 270, 916 P.2d 680 (1996); **697 *159 *Cooper v. Smith*, 70 Haw. 449, 776 P. 2d 1178 (1989).

However, HRCP Rule 60(b) specifically allows for collateral proceedings when there is an allegation of fraud upon the court, stating, "This rule does not limit the power of a court to entertain an *independent action* to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court." (Emphasis added.) Thus, like the policy favoring the finality of judgments, the policy against collateral attacks on judgments is not absolute and does not favor limiting liability in a collateral proceeding when there is an allegation that fraud was committed in the prior proceeding.

*Matsuura v. E.I. du Pont de Nemours & Co.*, 102 Haw. 149, 158–59, 73 P.3d 687, 696–97 (2003), *opinion after certified question answered*, 330 F. Supp. 2d 1101 (D. Haw. 2004), *rev'd and remanded sub nom. Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353 (9th Cir. 2005)

The HRCP also provide a means to compensate parties for injuries suffered from litigation misconduct. A successful motion under HRCP Rule 60(b) allows parties to vacate a judgment procured through fraud and to pursue compensation that is consistent with the true

value of their claims. Additionally, upon successfully reopening a case through an HRCP Rule 60(b) proceeding, aggrieved parties may pursue appropriate sanctions in the course of relitigating their claim. *See Virgin Islands Hous. Auth. v. David,* 823 F.2d 764, 767 (3d Cir.1987). Moreover, based upon the egregious nature of DuPont's fraud in the *Kawamata Farms* case, this court construed HRCP Rule 60(b)(3) to allow an award of attorneys' fees and costs as affirmative relief in addition to the relief afforded in the prior order or judgment. *Kawamata Farms,* 86 Hawai'i at 259, 948 P.2d at 1100 ("Under the circumstances of this case, based on the egregious nature of DuPont's fraud, we construe the HRCP so as not to disallow a remedy under HRCP Rule 60(b)(3) when there is a post-judgment discovery of fraud supported by clear and convincing evidence."). Thus, the HRCP provide a means for parties to receive compensation resulting from litigation misconduct.

      Although both civil contempt and HRCP Rule 60(b) provide remedies to a party aggrieved by litigation misconduct, we believe that the existence of these remedies does not oblige us to limit victims of fraud solely to these established remedies, given the nature and effect of fraud.

      *Matsuura v. E.I. du Pont de Nemours & Co.,* 102 Haw. 149, 160, 73 P.3d 687, 698 (2003), *opinion after certified question answered,* 330 F. Supp. 2d 1101 (D. Haw. 2004), *rev'd and remanded sub nom. Living Designs, Inc. v. E.I. Dupont de Nemours & Co.,* 431 F.3d 353 (9th Cir. 2005)

Concurring and Dissenting Opinion by ACOBA, J.

      As to the first certified question, I believe (1) four policy concerns underlying the litigation privilege favor affording Plaintiffs a separate action for fraud, (2) Hawai'i Rules of Civil Procedure (HRCP) Rule 60(b)(3) relating to fraud on the court should not govern the outcome of this case, (3) a separate action would not cause substantial delay and prolong litigation, and (4) a separate action to remedy fraudulent inducement perpetuated **708 *170 in a prior case, is supported by case law, reason, and policy. As to the second certified question, I disagree with the majority that a plaintiff must show reasonable reliance instead of actual reliance when proceeding in a cause of action for fraud. *See* majority opinion at 161-162, 73 P.3d at 699-700.

      *Matsuura v. E.I. du Pont de Nemours & Co.,* 102 Haw. 149, 169–70, 73 P.3d 687, 707–08 (2003), *opinion after certified question answered,* 330 F. Supp. 2d 1101 (D. Haw. 2004), *rev'd and remanded sub nom. Living Designs, Inc. v. E.I. Dupont de Nemours & Co.,* 431 F.3d 353 (9th Cir. 2005).

      Second, the policy of encouraging settlements weighs not against, but heavily in favor of, permitting Plaintiffs to file an independent action. *See* discussion *infra* section IV, subsection C. Third, when judgments are tainted by fraud, the policy of reinforcing the finality of judgments is outweighed by this court's preference for judgments on the merits. *See generally Lesser v. Boughey,* 88 Hawai'i 260, 261, 965 P.2d 802, 803 (1998) (noting that "this court has a policy 'to permit litigants to appeal and to have their cases heard on the merits' " (quoting *O'Connor v. Diocese of Honolulu,* 77 Hawai'i 383, 385, 885 P.2d 361, 363, *reconsideration denied,*

77 Hawai'i 489, 889 P.2d 66 (1994)) (emphasis omitted)); *Long v. Long*, 101 Hawai'i 400, 405, 69 P.3d 528, 533 (App.2003) (noting "strong policy favoring resolution of cases on their merits"). Fourth, the strong policy against collateral attacks on judgments has never been absolute as evidenced by the fact that HRCP Rule 60(b)(3) specifically allows a judgment procured by fraud to be set aside. *See generally In re Genesys Data Techs., Inc.,* 95 Hawai'i 33, 37, 18 P.3d 895, 899 (2001) ("Pursuant to HRCP Rule 60(b)(3), 'on motion and upon such terms as are just, the court may relieve a party ... from a final judgment ... for ... fraud[.]' " (Brackets omitted.)). Hence, this criterion, when fraud is alleged, weighs like the others, on the side of allowing an independent action to proceed.

> *Matsuura v. E.I. du Pont de Nemours & Co.*, 102 Haw. 149, 169–70, 73 P.3d 687, 707–08 (2003), *opinion after certified question answered,* 330 F. Supp. 2d 1101 (D. Haw. 2004), *rev'd and remanded sub nom. Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353 (9th Cir. 2005).

> In *Kawamata Farms,* the theory that the plaintiffs relied on for their HRCP 60(b)(3) motion is unclear. However, it is evident that this court affirmed the circuit court's allowance of affirmative relief under HRCP Rule 60(b)(3) based on "discovery fraud perpetuated *against the court.*" 86 Hawai'i at 257, 948 P.2d at 1098 (emphasis added). The one-year time limitation imposed on HRCP Rule 60(b)(3)[5] would not present an obstacle to relief in a motion based on fraud on the court. *See Schefke v. Reliable Collection Agency, Ltd.*, 96 Hawai'i 408, 431 n. 42, 32 P.3d 52, 75 n. 42 (2001) (stating that "courts place no time limit on setting aside a judgment on th[e] ground" of fraud on the court" (citations omitted)).

> But, fraud on the court is not fraud on a party, as is the gravamen of Plaintiffs' claim. *See id.* at 431, 32 P.3d at 75 ("[Fraud on the court] must be a direct assault on the integrity of the judicial process. Courts have required more than nondisclosure by a party or the party's attorney to find fraud on the court." (Citations and internal quotation marks omitted.)).

> *Matsuura v. E.I. du Pont de Nemours & Co.*, 102 Haw. 149, 171, 73 P.3d 687, 709 (2003), *opinion after certified question answered,* 330 F. Supp. 2d 1101 (D. Haw. 2004), *rev'd and remanded sub nom. Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353 (9th Cir. 2005).

As set forth below, Geraldine's claims of "fraud upon the court" and "undue influence" fall within the provisions of Rule 60(b)(3) and are therefore untimely.

1. Fraud on the court

1314 This court has noted that, "[s]ince the remedy for fraud on the court is far reaching, it only applies to very unusual cases involving 'far more than an injury to a single litigant[,]' but rather, a 'corruption of the judicial process itself.' " Schefke v. Reliable Collection Agency, Ltd., 96 Hawai'i 408, 431 n. 42, 32 P.3d 52, 75 n. 42 (2001) (citation omitted) (some brackets in original); see also Matsuura v. E.I. Du Pont de Nemours & Co., 102 Hawai'i 149, 171, 73 P.3d 687, 709 (2003) (Acoba, J., concurring and dissenting) *145 **456 ("fraud on the court is not fraud on a party"). It is generally accepted that fraudulent conduct such as perjury or non-disclosure by a party, standing alone, is insufficient to make out a claim for fraud on the court. See, e.g., Gleason v.

Jandrucko, 860 F.2d 556, 559–60 (2d Cir.1988) ("[N]either perjury nor nondisclosure, by itself, amounts to anything more than fraud involving a single litigant."); Lockwood v. Bowles, 46 F.R.D. 625, 632–34 (D.D.C.1969) ("[W]here the court or its officers are not involved, there is no fraud upon the court within the meaning of [FRCP] Rule 60(b)."); see also 12 James Wm. Moore et al., Moore's Federal Practice ¶ 60.21 [4][c] (3d ed. 2010) ("Fraud on the court may not be established simply by showing some misconduct by one of the parties to the suit.... If fraud on the court were to be given a broad interpretation that encompassed fraudulent misconduct between the parties, a judgment would always remain subject to challenge, and the one-year time limitation applicable to motions based on Rule 60(b)(3) would be meaningless.") (footnotes omitted).

> This court has similarly explained that:

> Not any fraud connected with the presentation of a case amounts to fraud on the court. It must be a "direct assault on the integrity of the judicial process." Courts have required more than nondisclosure by a party or the party's attorney to find fraud on the court. Examples of such fraud include "bribery of a judge," and "the employment of counsel in order to bring an improper influence on the court." Schefke, 96 Hawai'i at 431, 32 P.3d at 75 (citations omitted); cf. Child Support Enforcement Agency v. Doe, 98 Hawai'i 499, 504, 51 P.3d 366, 371 (2002) (holding that an allegation that "counsel had lied during the underlying proceedings in order to induce [a party] to agree to the judgment of paternity" was properly considered as fraud under HFCR Rule 60(b)(3)).

> Here, the record does not establish that George knew the Dominican Decree was invalid, or that he deliberately misrepresented his marital status to the family court.18 Moreover, Geraldine's allegation that George "conceal[ed] the fact that he had never divorced Sylvie" in order to "gain access to [the family court]," is an allegation of nondisclosure by an adverse party, rather than an allegation amounting to a " 'direct assault on the integrity of the judicial process.' "19 See **457 *146 Schefke, 96 Hawai'i at 431, 32 P.3d at 75. Although Geraldine styles this portion of her motion as one for "fraud on the court," the substance of her allegations does not rise to the level of fraud on the court. Accordingly, this allegation is properly evaluated as "fraud ..., misrepresentation, or other misconduct of an adverse party" under Rule 60(b)(3).20

> Geraldine cites several cases which she suggests stand for the proposition that her claim is properly considered under HFCR Rule 60(b)(6). However, these cases are inapposite and accordingly do not support Geraldine's position.21

> Accordingly, the ICA did not err in holding that the family court did not abuse its discretion in denying Geraldine relief in this respect.

> *Cvitanovich-Dubie v. Dubie*, 125 Haw. 128, 144–46, 254 P.3d 439, 455–57 (2011).

The second major point urged by appellant is that appellee practiced a fraud upon the court in failing to disclose the alleged stipulation and the referee's notice of decision handed down more than one month prior to filing the application.[2]

[17] In order to set aside a judgment or order because of fraud upon the court under Rule 60(b), Federal Rules of Civil Procedure, 28 U.S.C.A., it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision. Hazel-Atlas Glass Co. v. Hartford Empire Co., 1944, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250; Root Refining Co. v. Universal Oil Products Co., 3 Cir., 1948, 169 F.2d 514. The motion to set aside on this ground is addressed to the sound discretion of the trial court. Title v. United States, 9 Cir., 1959, 263 F.2d 28; Siberell v. United States, 9 Cir., 1959, 268 F.2d 61. And the burden is on the *310 moving party to establish fraud by clear and convincing evidence. Atchison, Topeka & Santa Fe Ry. Co. v. Barrett, 9 Cir., 1957, 246 F.2d 846.

England v. Doyle 281 F.2d 304 (1960).

The distinction between a fraud on the court and the fraud on the plaintiff is crucial since a finding of fraud on the court is unrelated to the fraud on the plaintiff and will not provide a basis for an award of punitive damages.SC 6. Punitive damages may be awarded only in cases where the wrongdoer has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations; or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences.

Kang v. Harrington, 59 Haw. 652, 587 P.2d 285 (1978).

The trial court specifically found that appellant's fraud and acts in furtherance of **291 that fraud were of such a wilful, malicious, wanton and aggravated nature and so recklessly indifferent to appellee's rights to justify the assessment of $20,000 punitive damages. But it seems that in making that determination, the trial court may have been influenced by *660 appellant's actions in attempting to perpetrate a fraud on the court as well as appellant's fraud on appellee. Kang v. Harrington, 59 Haw. 652, 587 P.2d 285 (1978).

At the conclusion of the trial the court issued the following statement from the bench:

THE COURT: Based on the evidence adduced, the Court makes the following findings: one, the credibility in this case of the witness for the defendant and the defendant himself is unreliable, and the Court finds that he should not be believed except as corroborated by other testimony in this case. Kang v. Harrington, 59 Haw. 652, 587 P.2d 285 (1978).

The Court finds that the defendant and his witnesses have sought to impose fraud on this Court as well as the plaintiff in this case; that they intentionally and

willfully intended and conceived a course of conduct to deprive plaintiff of his real property, save and except those rights as may arise from the rental agreement.  Kang v. Harrington, 59 Haw. 652, 587 P.2d 285 (1978).

        Tr. at 428 (June 4, 1975).

        [6] The distinction between appellant's fraud on the court and his fraud on appellee is crucial since a finding of fraud on the court is unrelated to the fraud on appellee and will not provide a basis for an award of punitive damages. In assessing punitive damages the trial court should have ignored appellant's fraud upon the court and looked only to his fraud on appellee. The appropriate action to be taken in a case of fraud upon the court is for the injured party to maintain an independent action based on that fraud and seek to be relieved from the judgment of the court. H.R.Civ.P. Rule 60(b). See e. g. Ellis v. Crockett, 51 Haw. 45, 59, 451 P.2d 814, 823 (1969).

        Kang v. Harrington, 59 Haw. 652, 587 P.2d 285 (1978).

        Thus, we find that even ignoring appellant's fraud on the court, appellant's fraudulent conduct with respect to appellee did rise to the level of oppressiveness, wantonness and malice sufficient to support an award of punitive damages. But to affirm the circuit court's finding as to the appropriateness of awarding punitive damages does not necessarily mean that we also affirm the amount of punitive damages granted. Kang v. Harrington, 59 Haw. 652, 587 P.2d 285 (1978).

        As early as 1886 it was held that a remittitur may be filed in this court. Riemenschneider v. Kalaehao, 5 Haw. 550 (1886).

        The rule has been adopted by this court that it is proper, either for the trial court upon an application for a new trial, or for an appellate court in reviewing a judgment, to permit the party, in whose favor a verdict or judgment has been returned or entered, to avoid the *663 granting of a new trial on account of error affecting only a part thereof, by entering a remittitur as to such erroneous part, when the court can clearly distinguish and separate the same. Izumi v. Park, 44 Haw. 123, 132, 351 P.2d 1083, 1088 (1960) Citing Hansen v. Boyd, 161 U.S. 397, 411, 16 S.Ct. 571, 40 L.Ed. 746 (1896).

        Kang v. Harrington, 59 Haw. 652, 587 P.2d 285 (1978).

        The proper measurement of punitive damages should be "(t)he degree of malice, oppression, or gross negligence which forms the basis for the award and the amount of money required to punish the defendant. . . ." Howell v. Associated Hotels, 40 Haw. at 501. Further, in determining that degree, the analysis is limited to an examination of defendant's state of mind at the time of the act. O'Harra v. Pundt, 210 Or. 533, 310 P.2d 1110 (1957). Consequently, defendant's subsequent actions and state of mind during trial are irrelevant.

        We are of the opinion that $20,000 punitive damages is excessive in the instant case and possibly a result of appellant's alleged fraud on the court. While

appellant is culpable of wanton and malicious fraud and punitive damages are appropriate, we find that the proper amount of punitive damages to be awarded, measured by the degree of malice, oppression or gross negligence of appellant at the time of the act *664 irrespective of appellant's alleged fraud upon the trial court and sufficient to punish him, is $2,500.00. Consequently, we order appellee to file a remittitur as to $17,500.00 of the $20,000.00 punitive damages originally granted by the trial court.

        Kang v. Harrington, 59 Haw. 652, 587 P.2d 285 (1978).

## FIRST CAUSE OF ACTION:
## LACK OF STANDING/WRONGFUL ATTEMPT TO FORECLOSURE,

**A.**    **No Defendant Has Standing to Foreclose**

43.. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

44.. An actual controversy has arisen and now exists between Plaintiff and Defendants specified hereinabove, regarding their respective rights and duties, in that Plaintiff contends that Defendants, and each of them, do not have an equitable right to foreclose on the Property because Defendants, and each of them, have failed to perfect any security interest in the Real Property collateral, or cannot prove to the court they have a valid interest as a real party in interest to the underlying Deed of Trust. Thus, the purported power of sale, or power to foreclose judicially, by the above specified Defendants, and each of them, no longer applies. .

45. Plaintiff requests that this Court find that the purported power of sale contained in the Deed of Trust is a nullity by operation of law, because

Defendants' actions in the processing, handling and attempted foreclosure of this §1031 - Exchange involved numerous fraudulent, false, deceptive and leading practices, including, but not led to, violations of State laws designed to protect borrowers, which has directly caused Plaintiff to be at an equitable disadvantage to Defendants, and each of them. Plaintiff further requests that title to the Real Property remain in Plaintiff's possession during the pendency of this litigation, and deem that any attempted sale of the Real Property is "unlawful and void".

**B.   <u>Defendant MERS Cannot be a Real Party in Interest in a Securitized Mortgage</u>**

46.Since the creation of Defendant's Deed of Trust, Defendant MERS was named the " beneficiary" of the Mortgage/Deed of Trust.

47.Plaintiff is informed and believes, and thereon alleges, that Defendant MERS lacks the authority under its corporate charter to foreclose a mortgage/deed of trust, or to own or transfer an interest in a Tangible Note debt obligation because MERS charter   MERS' powers and duties to functioning as an electronic registration system of Payment Intangible Chattel Paper Transferable Records as the underlying collateral to the Tangible Note for Accommodation Bill of Exchange.

48.Plaintiff is informed and believes, and thereon alleges, that in order to conduct a foreclosure action, a person or entity must have legal capacity as interested party and standing.

49. The Tangible Note in this action identifies the entity to whom it accommodated, the Originator. Therefore, the Tangible Note herein cannot

be transferred **in an ordinary course of business**; the attachments to the notice of default do not establish that endorsements were made, nor are there any other notices which establish that Tangible Note negotiation was executed in an ordinary course of business, nor are there any other notices which establish that the Originator sold the Tangible Note to another party for full value.

50. Furthermore, insofar as the parties to the §1031 - Exchange of Defendant's purported transfer off enforcement contract rights over the underlying Mortgage/Deed of Trust base their claim that the Tangible Note and underlying Security was negotiated by operation of law in an ordinary course of business to Defendant Ginnie Mae Remic Trust 2009-032, the Trustee of the § 1031 - Exchange herein, by the Originator, it is well established State law that the assignment of a Mortgage/Deed of Trust does not automatically assign the Tangible Note nor the underlying Payment Intangible Transferrable Record as the security interest is incident of the Tangible Note debt obligation.

51. Pursuant to State law, one must be able to prove their capacity of holder of the Tangible Note as one with rights acquired in an ordinary course of business in order to perfect the transfer of enforcement contract rights to the Mortgage/Deed of Trust instrument as collateral for a Tangible Note debt obligation.   Without proper negotiation and physical transfer, the "true sale" of the Tangible Note is invalid as a fraudulent conveyance, or as an unsecured Tangible Note stripped of the Real Property collateral.

52. Defendants MERS has failed to submit documents authorizing MERS, as nominee beneficiary for the Originator, to assign the subject Mortgage/Deed of Trust to the Special Purpose Vehicle trustee. Hence, MERS lacked authority as mere nominee beneficiary to assign Plaintiff's Mortgage/Deed of Trust, making any assignment from MERS defective.

53. Any attempt to transfer the beneficial interest of a trust deed without actual ownership of the underlying Tangible Note attached together in one with the underlying Payment Intangible Transferable Record, is void under law.   Therefore, Defendant MERS cannot establish that it is entitled to assert a claim in this case.  For this reason, as well as the other reasons set forth herein below, MERS cannot transfer an interest in Real Property, and cannot recover anything from Defendants' with unclean hands.

54. Defendants, and each of them, through the actions alleged above, claim the right to illegally commence foreclosure sale of Plaintiff's Real Property under the Mortgage/Deed of Trust on the Real Property via an *in Rem* action supported by false or fraudulent documents. Said unlawful foreclosure action has caused and continues to cause Plaintiff's great and irreparable injury in that Real Property is unique.

55. The wrongful conduct of the above specified Defendants, and each of them, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiff. Plaintiff will not have the beneficial use and enjoyment of its Home which was GINNIE

MAE is claiming loan is in default and Plaintiff is now seeking damages.

56. Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiff. Plaintiff has suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because Real Property is inherently unique and it will be impossible for Plaintiff to determine the precise amount of damage it will suffer.

## SECOND CAUSE OF ACTION
## FRAUD IN THE CONCEALMENT
### (Against Defendants)

57. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

58. Generally, one must prove the following to bring a legally sufficient claim of Fraudulent Concealment.

    a.  Concealed or suppressed a material fact;

    b.  Had knowledge of this material fact;

    c.  That this material fact was not within reasonably diligent attention, observation, and judgment of the Plaintiff;

    d.  That the Defendant suppressed or concealed this fact with the intention that Plaintiff be misled as to the true condition of the property; and

    e.  That Plaintiff was reasonably so misled; and

    f.  That Plaintiff suffered damage as a result.

59. Defendant Fannie Mae  concealed the fact that they were not a Federal Reserve Depository Bank.  The purported lender claims to have accepted by negotiation the issuer Plaintiff's negotiable instrument as debtor in a deposit account; Defendant GINNIE MAE furthered their deception by purporting to have given consideration for an instrument Defendants' purport to Plaintiff's issued Negotiable Instrument in the form of real money purportedly executing an underlying obligation (indebtedness) between the parties to the purported contract.  Defendant GINNIE MAE concealed in the presentation of the terms of the Mortgage contract(s) a cross acceptance of which Plaintiff, the issuer of the negotiable instrument would accept ownership of the real property collateral evidenced by the Warranty Deed for executing an accommodation negotiable instrument and pledged security agreement on behalf of GINNIE MAE ., the Accommodated party for the purpose of a material variation to the purported contract  in which Plaintiff would be acting as a *Guarantor* for GINNIE MAE , the Accommodated party to use Plaintiff's accommodation party's property to put the accommodated into funds as surety and a personal property security interest in Plaintiff's pledged security instrument as collateral to secure their account debtor status for the purpose of  a §1031 – Exchange (table funded) transaction for a service release premium shortly after the closing of the purported loan.  Defendant GINNIE MAE concealed a third-party Sponsor Bank warehouse lender as well as the terms of the Securitization Agreements, including, inter alia: (1) Financial Incentives paid; (2) existence of Credit Enhancement Agreements, and (3) existence of Acquisition Provisions.

By concealing the securitization, the true character of the purported loan in this way had a materially negative effect on Plaintiff that was known by Defendant GINNIE MAE but not disclosed.

60. Defendant GINNIE MAE knew or should have known that there was no meeting of the minds between the Plaintiff and the Originator GINNIE MAE regarding the true capacity of the parties and material facts of the purported loan and that most importantly, it created no indebtedness underlying obligation between the Defendants and other parties to the § 1031 – Exchange.

61. Defendant GINNIE MAE knew or should have known that had the truth been disclosed, Plaintiff would not have pledged a security agreement to GINNIE MAE the Accommodated Party for the purpose of an alternate means of collection.

62. Defendant GINNIE MAE intended to induce Plaintiff based on these material misrepresentations and improper disclosures. In addition, at the original closing on 07/07/04 both Plaintiff's signatures were forged on the original note. Plaintiff enters this as newly discovered evidence and did not discover this until Mr.Carrington's recent forensic audit.

63. Plaintiff's reasonable reliance upon the misrepresentations was detrimental. But for failure to disclose the true and material terms of the transaction, Plaintiff could have been alerted to issues of concern. Plaintiff would have known of Defendant's true intentions and profits from the proposed purported loan. Plaintiff would have known that the

actions of Defendant GINNIE MAE would have an adverse effect on the value of Plaintiff's home by clouding the title.

64. Defendant's failure to disclose the material terms of the transaction induced Plaintiff to enter into the §1031 – Exchange purported loan and accept the Services as Accommodated Party herein.

65. Defendants were aware of the misrepresentations and profited from them.

66. As a direct and proximate result of the misrepresentations and concealment Plaintiff was damaged in an amount to be proven at trial, including but not lied to costs of Loan, damage to Plaintiff's financial security, emotional distress, and Plaintiff has incurred costs and attorney's fees.

67. Defendant GINNIE MAE is guilty of malice, fraud and/or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff. As such, Plaintiff entitled to recover, in addition to actual damages, punitive damages to punish Defendant and to deter them from engaging in future misconduct.

## THIRD CAUSE OF ACTION
## FRAUD IN THE INDUCEMENT

68. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

69. Defendants, intentionally misrepresented to Plaintiff those Defendants were entitled to exercise the power of sale provision contained in the Mortgage/Deed of Trust. In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

70. Defendants misrepresented that they are the "holder and owner" of the Tangible Note and the beneficiary of the Mortgage/Deed of Trust. However, this was not true and was a misrepresentation of material fact. Documents state that the Originator allegedly sold the mortgage loan instrument to Ginnie Mae Remic Trust 2009-032   are attempting to collect on an intangible debt obligation via the §1031 – Exchange to which they have no legal, equitable, or pecuniary interest relating to Plaintiff's Real Property. This type of conduct is outrageous. Defendants are fraudulently foreclosing on the Real Property which they have no monetary or pecuniary interest, and doing so with unclean hands.

71. Defendant's failure to disclose the material terms of the transaction induced Plaintiff to enter into the §1031 – Exchange and accept the Accommodated Services as alleged herein.

72. The material misrepresentations were made by Defendants with the intent to cause Plaintiff to reasonably rely on the misrepresentation in order to induce the Plaintiff to submit to the foreclosure on the Real Property as opposed to recovering from predecessors in the § 1031 – Exchange on the Payment Intangible Obligation.

73. Defendants were aware of the misrepresentations and profited from them.

74. As a direct and proximate result of the misrepresentations and concealment, Plaintiff was damaged in an amount to be proven at trial, including but not lied to costs of Loan, damage to Plaintiff's financial security, emotional distress, and Plaintiff has incurred costs and attorney's fees.

75. Defendants are guilty of malice, fraud and/or oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff. As such Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

## FOURTH CAUSE OF ACTION
## UNCONSCIONABLE CONTRACT
### (Against Defendant GINNIE MAE -

76. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

77. The actions of Defendants as set forth herein, resulted in Plaintiff being forced, tricked, and mislead into parting with their property.

78. Generally, one must prove the following to bring a legally sufficient claim of Unconscionable Contract.

g. Undue Influence;

h. Duress;

i. Unequal Bargaining Power;

j. Unfair Surprise; and

k. Lid Warranty

79. Defendant GINNIE MAE presented in the origination of the purported loan that specific criteria such as FICO score and other industry standard underwriting requirements must be met in order to qualify for a loan of money for the subject property from GINNIE MAE , N.A.

80. Defendant GINNIE MAE presented in the origination of the purported loan that a preliminary signature on the Mortgage loan contract was required in order to "lock in" an interest rate regarding the terms of the purported loan.

81. Defendant GINNIE MAE failed to clarify in the terms of the Mortgage loan contract that GINNIE MAE the Originator on the contract was in fact acting solely in the capacity as Accommodated Party account debtor beneficiary for a purported loan of money.  GINNIE MAE concealed they were financially benefiting by bargaining with a third party to acquire a service release premium via wire funds transfer in order to table fund the purported loan at the closing using a warehouse line of credit.

82. Defendant GINNIE MAE knew or should have known that through a consciousness of innocence Plaintiff was at a special disadvantage when

attempting to grant an alternate means of collection via the Security Instrument real property lien Mortgage to GINNIE MAE , N.A.

83. It is clear that Defendant GINNIE MAE intended to exploit Plaintiff's special disadvantage and deny Plaintiff's superior rights to the subject property.

## FIFTH CAUSE OF ACTION
## BREACH OF CONTRACT
### (Against Defendant GINNIE MAE , CITIMORTGAGE)

84. Plaintiff realleges and incorporates by reference all previous paragraphs as though fully set forth herein.

85. The terms of the mortgage contract are clear.

86. Pursuant to paragraph 23 – Release, Defendant GINNIE MAE and specifically MERS, their electronic agent was obligated to satisfy, release and reconvey the beneficial security interest in Plaintiff's pledged Mortgage/Deed of Trust upon payment of all sums associated with the release premium to GINNIE MAE for Accommodated Party services rendered.

87. Defendant GINNIE MAE was paid in full for their Accommodated capacity to the Tangible Note and Mortgage/Deed of Trust when it sold and relinquished its interest in the Plaintiff's real property to GINNIE MAE. (Depositor).

88. Defendant GINNIE MAE failed to satisfy, release and reconvey the security instrument, thus breaching the terms found in paragraph 23 of the Mortgage/Deed of Trust.

## SIXTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

## (ALL DEFENDANTS)

89. Plaintiff realleges and incorporate herein by reference all previous paragraphs as though fully set forth herein.

90. Generally, one must prove the following to bring a legally sufficient claim of Breach of Fiduciary Duty.

   a.  Breach of full disclosure;

   a.  Breach of good faith and fair dealing;

   b.  Use of superior or influential position;

   c.  Use of superior knowledge; and

   d.  Failure to act in another's best interest

91. Defendant GINNIE MAE failed to disclose to Plaintiff that they were not the legitimate creditor but more accurately, were account debtor in the accommodated table funded 26 U.S. Code § 1031 – Exchange of property held for productive use or investment to CHL MORTGAGE PAS-THROUGH TRUST 2004-HYB8.

92. Defendant GINNIE MAE as beneficiary under the Mortgage having only an Accommodated personal property interest over the Real Property collateral failed to meet their fiduciary duty to satisfy, release and

reconvey the Real Property Lien Deed of Trust and the beneficial security interest (personal property) therein after receiving payment for all sums represented as the service release premium

93. After March 13, 2009 (closing) , and unknown to Plaintiff, Defendant GINNIE MAE for payment rendered through a service release premium divested itself of their capacity under Accommodated Note but, did not comply with the covenants of the Mortgage/Deed of Trust specifically, Covenant 23 – Release.  Plaintiff asks the court for equitable tolling as this was only discovered recently in the Declaration of Michael Carrigan expert witness.

94. GINNIE MAE , N.A.'s acting not in the best interest of the grantor of the Mortgage/Deed of Trust failed to adhere to their Fiduciary Duties. Defendant GINNIE MAE was to satisfy, release and reconvey the security instrument in order for Plaintiff to maintain clear and marketable title. As a result of its failure to comply with the Mortgage, Defendants caused a cloud on Plaintiff's superior claim to title.  As a result, Plaintiff was harmed.

## SEVENTH CAUSE OF ACTION
### QUIET TITLE

95. All Defendants named herein claim an interest and estate in the property adverse to   Plaintiff in that defendant asserts he is the owner of the note secured by the Mortgage/Deed of Trust to the property the subject of this suit.

96. All Defendants named herein claims an interest and estate in the Real Property adverse to Plaintiff in that Defendants' asserts to be the owner of Tangible Note secured by the Mortgage/Deed of Trust to the Real Property, the subject of this suit.

97. The claim of all Defendants are without any legal right whatsoever, and Defendants have no estate, title, lien or interest in or to the Real Property, or any part of the Real Property construed and hypothecated as "After Acquired Collateral" the Intangible Payment transferable record to the §1031 - Exchange.

98. The claim of all defendants herein named, and each of them, claim some estate, right, title, lien or interest in or to the property adverse to Plaintiff's title, and these claims constitute a cloud on Plaintiff's title to the Real Property.

99. Plaintiff, therefore, alleges, upon information and belief, that none of the parties to the §1031 - Exchange transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Real Property; and that all Defendants are stopped and precluded from asserting an unsecured claim against Plaintiff's Real Property Estate.

100.   Plaintiff requests the decree permanently enjoin defendants, and each of them, and all persons claiming under them, from asserting any adverse claim to Plaintiff's title to the property; and

101.   Plaintiff request the court award Plaintiff costs of this action, and such other relief as the court may deem proper.

## EIGHTH CAUSE OF ACTION

## SLANDER OF TITLE

102.   Plaintiff realleges and incorporates by reference all previous

paragraphs as though fully set forth herein

103.   Generally, one must prove the following to bring a legally sufficient

claim of Slander of Title.

a. There was a communication to a third party of;
b. A false statement;
c. Derogatory to another's title;
d. With malice; and
e. Causing special damages

104.   There are no UCC 1 Financial Statement(s) perfecting a personal

property interest regarding the purported true sale(s) and conveyance of

credit swaps in 26 U.S. Code §1031 – Exchange of transferable record

Smart Note personal property (payment intangible) in accordance of local

law of jurisdiction.

105.   There are no UCC 1 Financial Statement(s) perfecting personal

property interest in the Accommodated Mortgage/Deed of Trust contract

enforcement rights with the Secretary of State's Office where the Real

Property resides, giving constructive notice to the world of the true

capacity of the purported parties in the §1031 – Exchange in performance

of the securities of Ginnie Mae Remic Trust 2009-032.

106.   (See Asset Securitization Comptroller's Handbook Nov. 1997

http://www.occ.gov/publications/publications-by-type/comptrollers-hand

book/assetsec.pdf )

107.   Such instruments remained unrecorded as "Secret Liens" within the collateral file and was never submitted for recordation to perfect Defendant's rights to the Accommodated status Tangible Note and pledged Mortgage/Deed of Trust lien and the right to enforce an alternate means of collection.

108.   Equitable rights to the Payment Intangible in the§ 1031 – Exchange do not extend to a lien on Real Property in accordance with statutory law.

109.   In withholding such facts have potentially committed a grave error Slander of Title causing special damage.

110.   The act of recording the purported  Sept. 12, 2014 Assignment of Deed of Trust into the Official Records of the Bureau of Conveyances of the State of Hawaii is a communication to a third party of false statement derogatory to Plaintiff's title made with malice causing special damages to the Plaintiff's claim of title.


## NINTH CAUSE OF ACTION
## DECLARATORY RELIEF

111.   Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

112.   An actual controversy has arisen and now exists between Plaintiff and Defendants specified hereinabove, regarding his respective rights and duties in the subject note(s) and security instrument.  Plaintiff requests a judicial determination of the rights, obligations and interest of the parties

with regard to the subject property, and such determination is necessary and appropriate at this time under the circumstances so that all parties may ascertain and know their rights, obligations and interests with regard to the subject property.

113.   Plaintiff should be the equitable owner of the Subject Property.

Plaintiff seeks to quiet title as of the date of the filing of this Complaint. Plaintiff seeks a judicial declaration that the title to the Subject Property is vested in Plaintiff alone and that the Defendants be declared to have no interest estate, right, title or interest in the subject property and that the Defendants, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Subject Property subject to Plaintiff's rights.

## TENTH CAUSE OF ACTION
### CCPA

153.   Plaintiff incorporates and realleges all of the allegations set forth in

Paragraphs 1 through 1- 152 as if fully set forth herein.

154.   Title 15 USC Chapter 41 § 1461(g) states:

(g) Notice of new creditor
In addition to other disclosures required by this subchapter, no later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including -
(A) the identity, address, telephone number of the new creditor;
(B) the date of transfer;
(C) how to reach an agent or party having authority to act on behalf of the new creditor;
(D) the location of the place where transfer of interest in the debt is recorded; and
(E) any other relevant information regarding the new creditor.
Plaintiffs are entitled to actual and statutory damages as a result of

the Defendant's violation of the Consumer Credit Protection Act.

155.   Defendants violated the CCPA by failing refusing to disclose the

purported assignments/transfer of the Promissory Note and DOT.

## COUNT X1

## VIOLATION OF FEDERAL REGULATIONS, REGULATION X, , 12 C.F.R.

### § 1024.41 (b)(2)(i)(A)

156.   Plaintiff incorporates all of the allegations contained in Paragraphs 1 through
155  herein as if fully set forth herein.

157.   Code of Federal Regulations, Regulation X, 12 C.F.R. § 1024.41 (b)(2)(i)(A)
requires that when a bank is made aware of a communication that can
reasonably be deemed to be an application for loss mitigation, the servicer must
promptly conduct a review to determine whether the communication represents
a complete or an incomplete application. Re. X, 12 C.F.R. § expressly notes, "if
a servicer receives a loss mitigation application 45 days or more before a
foreclosure sale, a servicer shall: (A) Promptly upon receipt of a loss mitigation
application, review the loss mitigation application to determine if the loss
mitigation application is complete." Reg. X, 12 C.F.R. § 1024.41 (b)(2)(i)(A).

158.   Defendants GINNIE MAE and CitiMortgage, Inc..   did not conduct a
review to determine whether the Plaintiff's submitted loan modification
application represented a complete or an incomplete loan modification
application.

159.   Reg. X, 12 C.F.R. § 1024.41(b)(1) requires that when a servicer deems the loss mitigation application to be incomplete, the servicer must act affirmatively to complete the application. The servicer must exercise "reasonable diligence" to obtain any documents and information it claims to require to complete the application.

160.   Reg. X, 12 C.F.R. § 1024.41(b)(1) expressly notes, "[A} complete loss mitigation application means an application in connection with which a servicer has received all of the information that the servicer requires from the borrower in evaluation applications for the loss mitigation options available to the borrower. A servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." Reg. X, 12 C.F.R. § 1024.41(b)(1).

161.   Defendants GINNIE MAE and CitiMortgage, Inc.. did not act affirmatively to complete the Plaintiff's loan modification application and did not exercise reasonable diligence to obtain any documents/information to complete the application.

162.   Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B) requires (1) of the servicer determine that the application for loss mitigation is complete, it must send the borrower a notice acknowledging that the application is complete within five business days of receipt of the application, and (2) The servicer must provide a written notice to the borrower describing the documents and information needed to complete the application.

163.   Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B) expressly notes:

Notify the borrower in writing within 5 days (excluding legal
public holidays, Saturdays, and Sundays) after receiving the loss
mitigation application that the servicer acknowledges receipt of
the loss mitigation application and that the servicer has determine
that the loss mitigation application is either complete or
incomplete. If a loss mitigation application is incomplete, the
notice shall state the additional documents and information the
borrower must submit to make the loss mitigation application
complete and the application date pursuant to paragraph (2)(ii) of
this section.

164.  Defendant GINNIE MAE and Bank of America, N.A. did not send the

Plaintiff a notice acknowledging that his loan modification application was

complete within five days of receipt of the application and did not provide a

written notice to Plaintiff or Plaintiff's counsel describing the documents and

information needed to complete the application.

165.  Reg. X, 12 C.F.R. § 1024.41(b)(2)(ii) requires the written notice outlined in

Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B) must include a reasonable date from

the Bank by which the homeowner should submit the missing documents and

information. Reg. X, 12 C.F.R. § 1024.41(b)(2)(ii) expressly notes, "[T]he

notice required pursuant to paragraph (b)(2)(i)(B) of this section must include a

reasonable date by which the borrower submit the documents and information

necessary to make the loss mitigation application complete."

166.   Defendants GINNIE MAE did not (1) provide the written notice outlined in

Reg. X, 12 C.F.R. § 1024.41(b)(2)(i)(B), and (2) did not provide a reasonable

date from the Bank by which the borrower should submit the missing

documents and information.

167.   As a result of the aforementioned conduct, Defendant GINNIE MAE is in

violation of the Code of Federal Regulations , including but not limited to, Reg. X,

12 C.F.R. § 1024.41(b)(2)(i)(A); Reg. X, 12 C.F.R. § 1024.41(b)(1); Reg. X, 12

C.F.R. § 1024.41(b)(2)(i)(B); Reg. X, 12 C.F.R. § 1024.41(b)(2)(ii), and is

attempting to foreclose on the Plaintiff's property without any legal authority or

standing to do so, and in violation of State laws which were specifically enacted to

protect consumers such as Plaintiff from the type of abusive, deceptive, and unfair

conduct  in which Defendant engaged. Defendant's unlawful conduct has caused

Plaintiff's damages in an amount to be proven at trial. Defendants GINNIE MAE

as Trustees of their respective securitized trusts are liable for the actions of the

servicer because it is within the scope of said agency relationship.

## **PRAYER**

WHEREFORE PREMISES  CONSIDERED as Prayer for Relief, and

for the foregoing reasons, Plaintiff pray that Defendants be cited to appear

and answer herein, and that upon final hearing, Plaintiff be awarded judgment:

•     Declaring that Defendants lack any interest in the subject property which would permit them to foreclose, evict, or attempt to foreclose or evict, the trust deed and/or to sell the subject properties;

•     Declaring that the trust deed is not a lien against the subject properties, ordering the immediate release of the trust deed of record, and quieting title to the subject properties in Plaintiff and against Defendants and all claiming by, through or under them;

•     A refund of any wrongfully or improperly collected fees and payments to Defendants to which it had no right;

•     Pre- and post-judgment interest at the maximum rate allowed by law;

•     Attorney's fees;

•     Monetary relief over $100,000 but not more than $2,000,000,00; and

•     Such other and further relief at law and/or in equity to which Plaintiff may be justly entitled including but not limited to damages within the jurisdictional limits of this

Court, together with pre-judgment and post-judgment interest as are allowed by law.

Dated: ~~Jan.~~ Feb. 2 , 2018.

Bryant Delmar Wilson, Tanisha Janeen Wilson

## **VERIFICATION**

I, BRYANT DELMAR WILSON, TANISHA JANEEN WILSON, Pro per, am the Plaintiff in the above entitled matter and have personal knowledge to testify to the matters stated therein.  I have read the facts and allegations and declare under penalty of perjury in and for the State of Connecticut that the above is true and correct to the best of my knowledge.

...d and sworn to before me
this 2nd day of February 2018

Notary Public-First Judicia
Circuit, State of Hawaii

My commission expires: 03/16/2019



EMELYN ANUNCIACION
NOTARY
PUBLIC
No. 03-123
STATE OF HAWAII

Document Date: 2/2/2018    # Pages: 43
Name: EMELYN ANUNCIACION    1ST Circuit
Doc. Description: LACK OF STANDING
TO FORECLOSE / Jurisdiction ad Venue

Signature                    Date
NOTARY CERTIFICATION

EMELYN ANUNCIACION
NOTARY
PUBLIC
No. 03-123
STATE OF HAWAII